## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

LAQUITA M. R.,                    )
                                  )
                Plaintiff,        )
                                  )
        v.                        )        1:24CV604
                                  )
FRANK J. BISIGNANO,               )
Commissioner of Social            )
Security,                         )
                                  )
                Defendant.[1]     )

## MEMORANDUM OPINION AND ORDER
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Laquita M. R., brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security (the "Commissioner"), denying Plaintiff's claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Docket Entry 2.)  The Commissioner has filed the certified administrative record (Docket Entry 5 (cited herein as "Tr. __")), and both parties have submitted dispositive briefs in accordance with Rule 5 of the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g) (Docket Entry 10 (Plaintiff's Brief); Docket Entry 12 (Commissioner's Brief); Docket

---

[1] The United States Senate confirmed Frank J. Bisignano as the Commissioner of the Social Security Administration on May 6, 2025, and he took the oath of office on May 7, 2025.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank J. Bisignano should substitute for Leland C. Dudek as the defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Entry 13 (Plaintiff's Reply)).  For the reasons that follow, the Court will enter judgment for the Commissioner.[2]

## I.  PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI (Tr. 201-14), alleging a disability onset date of March 13, 2022 (see Tr. 201, 213).  Upon denial of those applications initially (Tr. 80-95, 112-16) and on reconsideration (Tr. 96-111, 123-31), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 132). Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing.  (Tr. 45-79.)  The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act.  (Tr. 21-44.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 195-200), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that decision, the ALJ made the following findings later adopted by the Commissioner:

1.    [Plaintiff] meets the insured status requirements of the . . . Act through March 31, 2026.

2.    [Plaintiff] has not engaged in substantial gainful activity since March 13, 2022, the alleged onset date.

3.    [Plaintiff] has the following severe impairments: bipolar disorder; anxiety; and post-traumatic stress disorder (PTSD).

. . .

---

[2] On consent of the parties, this "case [wa]s referred to [the undersigned] United States Magistrate Judge . . . to conduct all proceedings . . ., to order the entry of judgment, and to conduct all post-judgment proceedings []herein." (Docket Entry 8 at 1.)

2

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5. . . . [Plaintiff] has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: [she] is limited to understanding, remembering, and carrying out simple instructions, can use judgment to make simple work-related decisions; and can sustain concentration, attention, and pace sufficient to carry out simple, routine, repetitive tasks for two-hour intervals over the course of an eight-hour work day; limited to work in occupations that require no more than occasional contact with co-workers and supervisors and no contact with the general public as an essential function of the job; limited to work in a low stress setting, which is defined to mean work involving: no paced production requirements, such as on an assembly line, where the worker does not control the pace of production, occasional changes in the work setting or routine, and no dealing with crisis situations as an essential function of the job.

. . .

6. [Plaintiff] is unable to perform any past relevant work.

. . .

10. Considering [Plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [she] can perform.

. . .

11. [Plaintiff] has not been under a disability, as defined in the . . . Act, from March 13, 2022, through the date of th[e ALJ's] decision.

(Tr. 27-38 (bold font and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

## A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of

4

more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any

5

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3] "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity [('RFC')] to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174

---

[3] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

F.3d 473, 475 n.2 (4th Cir. 1999).[4]  A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry.  For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.'  If the claimant is working, benefits are denied.  The second step determines if the claimant is 'severely' disabled.  If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177.  Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's [RFC]." Id. at 179.[5]  Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant  work"; if so, the claimant does not qualify as disabled. Id. at 179-80.  However, if the

---

[4] "Through the fourth step, the burden of production and proof is on the claimant.  If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

[5] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)).  The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265.  "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

7

claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[6]

## B. Assignment of Error

In Plaintiff's first and only issue on review, she maintains that "[t]he RFC determination is not supported by substantial evidence because the ALJ failed to properly evaluate the opinion evidence pursuant to 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2)." (Docket Entry 10 at 2 (bold font and block formatting omitted); see also Docket Entry 13 at 1-4.) More specifically, Plaintiff contends that "three treating providers[, Dr. Ralph Newman, Meaghan Whitson, LCSW ('LCSW Whitson'), and Uchenna Nwoko, PA ('PA Nwoko'),] offered opinions related to Plaintiff's ability to work and quantified limitations that would impact the ability to work on

---

[6] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

a regular and continuing basis, eight hours a day, five days a week . . .[; h]owever, the ALJ rejected all of these opinions without properly addressing supportability and consistency and without supporting her conclusions with substantial evidence." (Docket Entry 10 at 7 (hyphen omitted).)   Plaintiff notes that "[t]he [VE] testified that an individual who was off task more than ten percent would be unable to work[,]" and "that more than one absence a month would preclude work" (id. at 13 (citing Tr. 74-75)), and further points out that "Dr. Newman, LCSW W[h]itson, and PA Nwoko all opined Plaintiff would be off-task and absent beyond employer tolerances."   (Id. (citing Tr. 361, 429, 469).)   In Plaintiff's view, "the ALJ has frustrated meaningful review with the legally insufficient evaluations of [those] opinions." (Id. at 13.)   For the reasons explained in more detail below, Plaintiff's contentions lack merit.

For benefits applications filed on or after March 27, 2017, such as Plaintiff's (see Tr. 201-14), the SSA has enacted substantial revisions to the regulations governing the evaluation of opinion evidence.   See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017).   Under the new regulations, ALJs need not assign an evidentiary weight to medical opinions or to accord special deference to treating source opinions.   See 20 C.F.R. §§ 404.1520c(a), 416.920c(a) (providing that ALJs "will not defer

9

or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources").[7] Instead, an ALJ must determine and "articulate in [the] . . . decision how _persuasive_ [he or she] find[s] all of the medical opinions and all of the prior administrative medical findings in [a claimant's] case record." 20 C.F.R. §§ 404.1520c(b), 416.920c(b) (emphasis added). Moreover, when a medical source provides more than one opinion or finding, the ALJ will evaluate the persuasiveness of such opinions or findings "together in a single analysis" and need not articulate how he or she considered those opinions or findings "individually." 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1).

In evaluating the persuasiveness of an opinion or finding, the SSA deems supportability and consistency "the most important factors" and thus the ALJ must address those two factors in evaluating the persuasiveness of an opinion or a finding. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).[8] The ALJ must only

_____

[7] The new regulations define a "medical opinion" as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the abilities to perform the physical, mental, or other demands of work activity or to adapt to environmental conditions. 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2) (2017). Those regulations also define a "prior administrative medical finding" as a "finding, other than the ultimate determination about whether [a claimant is] disabled, about a medical issue made by [the SSA's] Federal and State agency medical and psychological consultants at a prior level of review." 20 C.F.R. §§ 404.1513(a)(5), 416.913(a)(5) (2017).

[8] "Supportability" means "[t]he extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation." Revisions to Rules, 82 Fed. Reg. at 5853; _see also_ 20 C.F.R.

10

address the three other persuasiveness factors — the nature and extent of the medical source's relationship with the claimant and area of specialization, as well as the catch-all "other factors that tend to support or contradict" the opinion/finding, 20 C.F.R. §§ 404.1520c(c)(3)-(5), 416.920c(c)(3)-(5) — when the ALJ finds two or more opinions or findings about the same issue "[e]qually persuasive" in terms of supportability and consistency, 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)3).

1. <u>Dr. Newman's Opinions</u>

Dr. Newman completed a preprinted form entitled "Mental Health Medical Source Statement" on May 11, 2022 ("Newman MSS"), on which he listed Plaintiff's diagnoses as "Bipolar Depression; Panic Disorder [with] Agoraphobia; [and] PTSD." (Tr. 361.) Dr. Newman noted that Plaintiff experienced "ongoing auditory hallucinations that only partially respond[ed] to medication" and "[r]ecurrent, severe panic attacks 3[ times] per day," along with anhedonia, decreased energy and fatigue, persistent anxiety, withdrawal, psychomotor agitation or retardation, difficulty concentrating, impaired memory, paranoia, and disturbance of mood and sleep. (<u>Id.</u>) According to Dr. Newman, Plaintiff's mental impairments would cause her to need "about 10 [unscheduled breaks] per shift," remain off task "25 [percent] or more" of a typical workday, and

---

§§ 404.1520c(c)(1), 416.920c(c)(1). "Consistency" denotes "the extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." Revisions to Rules, 82 Fed. Reg. at 5853; <u>see also</u> 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

11

miss work "[m]ore than four days per month." (Id.) Dr. Newman believed that Plaintiff could not handle "even 'low stress' work," and opined that Plaintiff had "marked" limitation in her ability to understand, remember, or apply information, "extreme" limitations in her abilities to interact with others and concentrate, persist, or maintain pace, and "moderate" limitation in her ability to adapt and self-manage. (Id.)

The ALJ provided the following evaluation of the persuasiveness of the Newman MSS:

> Th[e Newman MSS] is not persuasive as to the marked and extreme limitations. This opinion is not well supported, as it contains almost no narrative explanation for the opinion. Further, while the opinion was somewhat supported by [Plaintiff's] presentation and subjective report on the visits shortly before Dr. Newman completed the [MSS] ([Tr. 320-60]), when [Plaintiff] was reportedly not able to afford all of her medications, the opinion is not consistent with subsequent records, once [she] had begun taking all of the prescribed medications only a few months later ([Tr. 386-427]). Once she was taking those medications, while she was not without symptoms and still had some abnormalities on mental status exams, overall these records do not support more than a moderate limitation or a need for unscheduled breaks, excessive time off task or absenteeism.

(Tr. 35.) Plaintiff contests that evaluation by the ALJ on three grounds (see Docket Entry 10 at 7-8), none of which carry the day.

To begin, Plaintiff objects to the ALJ's rationale that the Newman MSS "'contain[ed] almost no narrative explanation for the opinion.'" (Id. at 7 (quoting Tr. 35).) According to Plaintiff, "[t]he regulations include no requirement that a narrative explanation be provided within the four corners of the opinion

12

itself" but, instead, "require[] a review of the information contained in the records from the source itself, meaning all the records from Dr. Newman were to be reviewed and evaluated for supportability." (Id. (citing 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2)).)

Although the regulations do not <u>require</u> a medical source to include narrative explanations for his or her opinions, those regulations make clear that "[t]he more relevant the objective medical evidence <u>and supporting explanations</u> presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions . . . will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1) (emphasis added). Here, Dr. Newman did not provide <u>any</u> narrative explanation for his opinions regarding unscheduled breaks, off-task time, low stress work, work absence, and functional limitations. (<u>See</u> Tr. 361.) District courts within the Fourth Circuit have long recognized that ALJs may permissibly discount check-box forms that lack narrative explanations. <u>See, e.g.</u>, <u>Simone v. Saul</u>, No. 5:19CV41, 2020 WL 961431, at *5 (E.D.N.C. Jan. 24, 2020) (unpublished) ("Check-box or fill-in-the-blank forms are typically considered weak evidence."), <u>recommendation adopted sub nom. Simone v. Berryhill</u>, 2020 WL 968361 (E.D.N.C. Feb. 27, 2020) (unpublished); <u>Curtis W. v. Saul</u>, No. CV 18-3037, 2019 WL 6872869, at *3 (D. Md. Dec. 17, 2019) (unpublished) ("Although it is entirely appropriate for a treating

13

source to indicate their opinion on [] a checkbox form, an ALJ is permitted to discount such opinions where they do not include enough narrative explanation to communicate the basis of the opinion." (internal quotation marks omitted)); Mullinax v. Saul, No. 6:18CV690, 2019 WL 4565050, at *3 (D.S.C. Sept. 20, 2019) (unpublished) ("[T]he ALJ found [the physician's] opinion was [] entitled to less weight because it was a checkbox form calling for minimal narrative explanation, which is [] a proper basis for not giving the opinion of a treating physician controlling weight[.]" (internal quotation marks and parenthetical citation omitted)); Shelton v. Colvin, No. 7:13CV470, 2015 WL 1276903, at *3 (W.D. Va. Mar. 20, 2015) (unpublished) ("Notably, [the physician]'s opinion is simply a checkbox form. Courts in the Fourth Circuit have recognized the limited probative value of such checkbox opinion forms."); Schaller v. Colvin, No. 5:13CV334, 2014 WL 4537184, at *16 (E.D.N.C. Sept. 11, 2014) (unpublished) ("[S]ince the opinion is in the form of a questionnaire, the ALJ was entitled to assign it less weight than a fully explanatory and narrative opinion because such form opinions do not offer adequate explanation of their findings.").[9]  The ALJ did not err by discounting the Newman

_____

[9] Although not relied on by Plaintiff (see Docket Entries 10, 13), in Easterbrook v. Kijakazi, 88 F.4th 502, 514 (4th Cir. 2023), the United States Court of Appeal for the Fourth Circuit faulted an ALJ's decision to discount a treating physician's opinions in part because the physician "merely checked off boxes on a form and did not provide a narrative report containing specific clinical findings to support all the extreme limitations." Easterbrook, 88 F.4th at 514 (internal quotation marks omitted).  However, the Fourth Circuit found ALJ error, because the physician had actually "provided notations in the margins relevant to [the plaintiff]'s condition" and "submitted a narrative letter . . .

MSS, in part, because it lacked narrative explanations. (See Tr. 35.)

Next, Plaintiff contends that the ALJ's observation that the Newman MSS "'was somewhat supported by [Plaintiff's] presentation and subjective report on the visits shortly before Dr. Newman completed the [MSS]' . . . actually indicates [the Newman MSS] *was* supported by [his] examination findings[, and] . . . it should have been found persuasive." (Docket Entry 10 at 7 (italics supplied by Plaintiff) (quoting Tr. 35).) Plaintiff additionally argues that, although "the ALJ discount[ed] the supportability of [the Newman MSS] because there appeared to be some improvement after Plaintiff began taking some medications" (id. (citing Tr. 35)), "the ALJ even note[d] that '[Plaintiff] was not without symptoms and still had some abnormalities on mental status exams'" (id. at 7-8 (quoting Tr. 35)). Plaintiff thus faults the ALJ for "actually find[ing] support for [the Newman MSS] but []not cit[ing] anything specific that would allow the Court to understand why [the Newman MSS] should be rejected." (Id. at 8.) That argument fails for two reasons.

First, Plaintiff's argument glosses over the modifier "somewhat" the ALJ placed in front of the word "supported" (Tr.

that provided details about [the plaintiff], her condition, her prior treatment, the current scope of her disability, and [the physician's] prognosis for [the plaintiff]'s condition" and thus found that "[the physician]'s opinions offered far more than a cursory review of [the plaintiff]'s condition." Id. Thus, Easterbrook did not hold that an ALJ errs merely by discounting a check-box medical opinion as lacking an explanatory narrative. See id.

35).  (See Docket Entry 10 at 7.)  The ALJ's finding the Newman MSS's opinions "somewhat supported" by Dr. Newman's records (Tr. 35 (emphasis added)) would not, even standing alone, require the ALJ to find those opinions fully persuasive and/or to adopt those opinions.  Second, and more significantly, Plaintiff interprets the ALJ's statement deeming the Newman MSS "somewhat supported" (Tr. 35) outside of its larger context.  The ALJ actually stated that, "while the [Newman MSS] was somewhat supported by [Plaintiff's] presentation and subjective report on the visits shortly before Dr. Newman completed the [MSS], when [Plaintiff] was reportedly not able to afford all of her medications, the [MSS] is not consistent with subsequent records, once [she] had begun taking all of the prescribed medications only a few months later."  (Tr. 35 (emphasis added) (citing Tr. 386-427).)  The full context of the ALJ's statement makes clear she found the Newman MSS's opinions only "somewhat supported" by Dr. Newman's records (id. (emphasis added)), which covered the brief time frame from March 16, 2022, to May 11, 2022 (see Tr. 330-61), when Plaintiff experienced an acute exacerbation of her mental impairments (see Tr. 63), and had not yet started taking the antipsychotic medication Seroquel (see Tr. 320), but not consistent with subsequent treatment which showed improvement on medication (see Tr. 35 (citing Tr. 386-427)).  In short, the Court can meaningfully review the ALJ's supportability analysis of the Newman MSS.

Plaintiff additionally asserts that "the ALJ completely ignore[d] the regulatory requirement to discuss consistency[,]" because she "d[id] not acknowledge any medical evidence from any other provider in the discussion of [the Newman MSS]." (Docket Entry 10 at 8 (citing 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2)).) That assertion entirely overlooks the ALJ's statement that "the [Newman MSS] is <u>not consistent with subsequent records</u>, once [Plaintiff] had begun taking all of the prescribed medications only a few months later." (Tr. 35 (emphasis added) (citing Tr. 386-427).) In support of that statement, the ALJ cited to treatment records from Plaintiff's primary care provider, Alvesha Williams, NP ("NP Williams"), from October 20, 2022, through March 23, 2023. (<u>Id.</u> (citing Tr. 386-427).)[10] As the ALJ had previously observed in the decision, those records reflected "that [Plaintiff] was grossly oriented to person, place and time[,] . . . [had] intact judgment and insight," with "normal" mood and an "appropriate" affect, reported "[n]o hallucinations and no delusions[,] . . . and [] was only taking Seroquel." (Tr. 32.) The ALJ thus cited to substantial evidence that lacked consistency with the Newman MSS, allowing for meaningful judicial review.

---

[10] The record contains no treatment between May 11, 2022, the date of the Newman MSS, and October 20, 2022, the date of Plaintiff's first visit with NP Williams in 2022.

17

2.  _LCSW Whitson's Opinions_

LCSW Whitson filled out the same preprinted form as Dr. Newman on March 24, 2023 ("Whitson MSS"), diagnosing Plaintiff with bipolar I disorder, agoraphobia with panic disorder, PTSD, and insomnia disorder.  (Tr. 429.)[11]  LCSW Whitson stated that Plaintiff experienced "ongoing hallucinations" and "[r]ecurrent, severe panic attacks 3[ times per] day," along with anhedonia, decreased energy and fatigue, persistent anxiety, withdrawal, difficulty concentrating, impaired memory, paranoia, hyperactivity/ distractibility, and disturbance of mood and sleep.  (_Id._)  In LCSW Whitson's view, Plaintiff's psychiatric conditions would cause her to need 12 "brief" unscheduled breaks per shift, remain off-task "25 [percent] or more" of a typical workday, and miss work "[m]ore than four days per month."  (_Id._)[12]  LCSW Whitson opined that Plaintiff had "marked" limitation in her ability to understand, remember, or apply information, "extreme" limitations in her abilities to interact with others and concentrate, persist, or maintain pace, and "moderate" limitation in her ability to adapt and self-manage.  (_Id._)

---

[11]  LCSW Whitson listed the psychiatric diagnostic codes "296.5, 300.21, 309.81, [and] 780.52[,]" which correspond to bipolar I disorder, agoraphobia with panic disorder, PTSD, and insomnia disorder, respectively, in the _Diagnostic and Statistical Manual of Mental Disorders_, Fifth Edition ("DSM-V").  _See_ DSM-V, 127, 217, 271, 362 (Am. Psychol. Ass'n 5th ed. 2013).

[12]  LCSW Whitson offered contradictory opinions regarding Plaintiff's ability to tolerate work stress, in that she checked both the box that characterized Plaintiff as "[i]ncapable of even 'low stress' work" and the box that deemed her "[c]apable of moderate stress - normal work."  (Tr. 429.)

The ALJ analyzed the persuasiveness of the Whitson MSS as follows:

> Th[e Whitson MSS] is [] not persuasive. It is not well supported in the body of the opinion itself, and it is not consistent with overall records once [Plaintiff] had begun taking all of the prescribed medications ([Tr. 386-427]). Once she was taking those medications, only a few months after the alleged onset date, while she was not without symptoms and still had some abnormalities on mental status examinations, overall these records do not support more than a moderate limitation or a need for unscheduled breaks, excessive time off task or absenteeism. Notably, this opinion is inconsistent with findings on mental status examinations shortly after the [Whitson MSS] ([Tr. 520-61, 589]).

(Tr. 36.) Plaintiff attacks that analysis on three bases (see Docket Entry 10 at 9-10) but, for the reasons discussed in more detail below, none of those bases establishes a basis for remand.

Plaintiff first reiterates her objection to the ALJ's reliance on the lack of "narrative explanation within the four corners of the [Whitson MSS]." (Id. at 9 (citing Tr. 36).) As discussed above, however, the ALJ did not err in discounting the persuasive value of the Whitson MSS, in part, because it lacked any supporting explanation for its significant limitations. See, e.g., Simone, 2020 WL 961431, at *5 ("Check-box or fill-in-the-blank forms are typically considered weak evidence."); Curtis W., 2019 WL 6872869, at *3 ("Although it is entirely appropriate for a treating source to indicate their opinion on [] a checkbox form, an ALJ is permitted to discount such opinions where they do not include enough narrative explanation to communicate the basis of the

opinion." (internal quotation marks omitted)); Mullinax, 2019 WL 4565050, at *3 ("[T]he ALJ found [the physician's] opinion was [] entitled to less weight because it was a checkbox form calling for minimal narrative explanation, which is [] a proper basis for not giving the opinion of a treating physician controlling weight[.]" (internal quotation marks and parenthetical citation omitted)); Shelton, 2015 WL 1276903, at *3 ("Notably, [the physician]'s opinion is simply a checkbox form. Courts in the Fourth Circuit have recognized the limited probative value of such checkbox opinion forms."); Schaller, 2014 WL 4537184, at *16 ("[S]ince the opinion is in the form of a questionnaire, the ALJ was entitled to assign it less weight than a fully explanatory and narrative opinion because such form opinions do not offer adequate explanation of their findings.").

Second, Plaintiff posits that the ALJ's finding "that 'overall' the record only support[ed] moderate limitations . . . frustrates meaningful review because it is unclear what evidence from LCSW Whitson's own records fails to support [the Whitson MSS]." (Docket Entry 10 at 9 (quoting Tr. 36).) According to Plaintiff, LCSW Whitson's "examinations noted anxious mood and auditory hallucinations[,]" and Plaintiff "noted that it was challenging to alter hallucinations versus reality when she [wa]s around other people." (Id. at 10 (citing Tr. 473).)

20

Plaintiff contends that "[t]h[o]se findings were not mentioned by the ALJ although they support the [Whitson MSS]." (Id.)

As an initial matter, although Plaintiff refers to "examinations" conducted by LCSW Whitson (see id. (emphasis added)), the record contains only one treatment record from LCSW Whitson dated April 27, 2022 (see Tr. 473). Moreover, contrary to Plaintiff's assertion that LCSW Whitson's "findings were not mentioned by the ALJ" (Docket Entry 10 at 10), previously in the ALJ's decision, she discussed that treatment record as follows:

> Office treatment records from Triad [Adult and Pediatric Medicine] dated April 27, 2022, showed [Plaintiff] presented with anxious mood with an appropriate affect. She denied suicidal ideation or homicidal ideation. She reportedly experience[d] auditory hallucinations. However, [she] reported that she was noticing an improvement with her panic attacks and anxiety since taking medication. She expressed that she had not experienced as many panic attacks and that she had been trying to go in public more frequently. [She] expressed that she was able to alter between hallucinations and reality when alone. She also reported that she had not purchased antipsychotic medication, but had every other medication. She stated that she planned to go purchase antipsychotic medication, as she realized the importance ([Tr. 473]).

(Tr. 32 (emphasis added).) As emphasized above, the ALJ clearly discussed the findings Plaintiff references, as well as Plaintiff's report to LCSW Whitson of improving panic attacks and anxiety. See McCartney v. Apfel, 28 F. App'x 277, 279 (4th Cir. 2002) (holding that "the ALJ need only review medical evidence once in his decision"). Moreover, the ALJ acknowledged the fact that, at the time of LCSW Whitson's sole examination of Plaintiff, she had not

21

yet started on Seroquel (see id.), which the ALJ cited as one basis to discount the Whitson MSS (see Tr. 36). Under such circumstances, the Court can trace the path of the ALJ's supportability analysis.

Third, Plaintiff targets the ALJ's consistency analysis as a "blanket finding that 'th[e Whitson MSS wa]s inconsistent with findings on mental status examinations,' [which] point[ed] to a swath of evidence that d[id] not direct the Court into meaningful review of why the [Whitson MSS wa]s not persuasive." (Docket Entry 10 at 10 (quoting Tr. 36).) According to Plaintiff, "[t]he [ALJ's] citation to the record . . . contains mixed evidence that fails to show any genuine inconsistency with [the Whitson MSS]" (id. (citing Tr. 520-51, 590)), including "objective findings" such as a "[Generalized Anxiety Disorder ('GAD')]-7 score [of] 18 indicating severe anxiety, and [a] [Patient Health Questionnaire ('PHQ')]-9 score [of] 22 indicating severe depression" (id. (citing Tr. 590)).

As a threshold matter, Plaintiff mischaracterizes her scores on the PHQ-9 and the GAD-7 as "objective findings." (Id. (emphasis added).) "The [PHQ]-9 is a self-administered scale that helps clinicians assess for depression. The nine items on the scale incorporate depression criteria from the [Diagnostic and Statistical Manual of Mental Disorders (Am. Psychiatric Ass'n 4th ed. 1994) ('DSM-IV')]." Xavier S. v. Saul, No. 1:19CV1195, 2020 WL 1015816, at *16 n.10 (E.D. Va. Mar. 2, 2020) (unpublished)

22

(emphasis added) (internal citations omitted).  The PHQ-9 "scores each of the nine DSM-IV criteria as '0' (not at all) to '3' (nearly every day).  The total of the nine scores is used to rate the severity of depression.  A total score of 0-4 is 'none,' 5-9 is 'mild,' 10-14 is 'moderate,' 15-19 is 'moderately severe,' and 20-27 is 'severe.'"  Deboard v. Colvin, No. 3:16CV2661, 2017 WL 510743, at *3 (S.D.W. Va. Jan. 18, 2017) (unpublished), recommendation adopted sub nom. Deboard v. Berryhill, 2017 WL 510052 (S.D.W. Va. Feb. 7, 2017) (unpublished).

"Like the PHQ-9, the [GAD]-7 is a self-administered diagnostic instrument to measure anxiety severity.  A score of 0-4 represents a 'minimal' level of anxiety; 5-9, 'mild'; 10-14, 'moderate'; and 5-21, 'severe.'"  Buechner v. Saul, No. 20CV379, 2021 WL 457610, at *2 (W.D. Wis. Feb. 9, 2021) (unpublished) (emphasis added) (internal citations omitted).  Thus, Plaintiff's PHQ-9 and GAD-7 scores did not constitute "objective findings" substantiating the Whitson MSS.  See Facer v. Commissioner of Soc. Sec., No. CV 23-281, 2024 WL 5167714, at *1 n.1 (W.D. Pa. Dec. 19, 2024) (unpublished) ("[T]he ALJ's failure to discuss the PHQ-9 and GAD-7 scores in relation to their consistency with [a therapist]'s opinion is not reversible error as these scores are based on [the p]laintiff's subjective reports, not results on objective examination."); Nicole M. v. O'Malley, No. 7:22CV600, 2024 WL 1283343, at *5 n.3 (W.D. Va. Mar. 26, 2024) (unpublished) ("The

23

PHQ-9 test appears to calculate a score based entirely on the subject's responses to certain questions. As one court put it, those test scores were 'based upon claimant's subjective reports, rather than [the provider's] objective assessments.'" (internal parenthetical citation omitted) (quoting Moffat v. Kijakazi, No. 3:21CV129, 2022 WL 2196311, at *13 (N.D.W. Va. May 23, 2022) (unpublished), recommendation adopted, 2022 WL 2195764 (N.D.W. Va. June 17, 2022) (unpublished))); Amy R. v. Saul, No. 19CV1508, 2020 WL 3077502, at *1 (D. Minn. June 10, 2020) (unpublished) (rejecting the plaintiff's "argu[ment] that the ALJ erred when he failed to consider [the plaintiff's] PHQ-9[ and] GAD-7[] scores as objective evidence of severe depression and anxiety," because "the PHQ-9 and the GAD-7 are measurements that are derived solely from the patient's report of their own subjective experience" and thus "to rule that the tests are not subjective would unacceptably blur the line between subjective and objective tests").

Moreover, the ALJ here found Plaintiff's subjective statements (which would include her PHQ-9 and GAD-7 scores) "not entirely consistent with the medical evidence and other evidence in the record" (Tr. 30), a finding which Plaintiff did not challenge (see Docket Entries 10, 13). See Sheila A. v. Berryhill, No. 17CV2161, 2018 WL 4572982, at *4 (D. Minn. Sept. 24, 2018) (unpublished) ("Because the content on a PHQ is derived exclusively from the patient's subjective complaints, it is subject to being credited or

24

discredited for the same reasons as other subjective complaints."), aff'd, 802 F. App'x 228 (8th Cir. 2020)).

Furthermore, the ALJ earlier in her decision discussed in detail the treatment records she cited as inconsistent with the Whitson MSS. (See Tr. 33-34; see also Tr. 36 (citing Tr. 520-51, 589).) The ALJ provided the following discussion of those records:

> Following the hearing, [Plaintiff]'s representative submitted office treatment records from Cone Health – Guilford County Behavioral Health covering April 24, 2023 through June 6, 2023. [Plaintiff] presented on April 24, 2023, to establish care with a new psychiatrist. Her prior psychiatrist, Dr. Newman, had not been able to see her for some time due to his own health problems. [Plaintiff] reported that she was currently on Alprazolam 1 mg; Seroquel 200 mg, and Trazodone 50 mg. She was no longer taking phentermine because it made her anxiety worse. [She] was told she would have to come back during walk-in hours, and she reported that she would come back Wednesday after she drop[ped] her daughter off at school. Other than a mild headache, she reported no other concerns at present. Mood was anxious and affect was congruent. Thought processes were coherent and goal directed. Thought content was logical. Judgement, insight and concentration were all fair. She returned on April 26, 2023. [She] related that her auditory hallucinations kept her safe and reminded her to be wary of her surroundings. For example, they may tell her to look both ways before making a turn while driving. Since taking Seroquel, [she] stated that the voices in her head had calmed down considerably. [She] reported that during her manic episodes, she did not like to be around others. She reported occasionally having racing thoughts and stated that she also experienced premonitions. She denied visual hallucinations but reported auditory hallucinations. [She] reported having been cyber bullied and harassed through social media. She reported re-experiencing flashbacks and having intrusive thoughts and difficulty concentrating when hyperarousal [sic]. [She] was to continue taking medications as prescribed. She was to return in six weeks. [She] was seen on June 6, 2023, for medication management. She reported that her medications continued

25

to be helpful and denied any issues or concerns regarding her current regimen. [She] reported being under stress after being harassed by an individual that nearly missed her and her daughter with [the individual's] vehicle. [Plaintiff] was alert and oriented times four, calm, cooperative and fully engaged in conversation during the encounter. Mood was okay. [She] continued to endorse auditory hallucinations but denied worsening symptoms. [She] denied visual hallucinations and did not appear to be responding to internal/external stimuli. She reported receiving on average 12 hours of sleep each night. Assessment showed [Plaintiff] denied any issues or concerns regarding her current medication regimen. It appeared [her] current symptoms were attributed to a verbal altercation she had earlier in the day. [She] appeared stable and was to continue to take her medications as prescribed.

(Tr. 33-34 (emphasis added) (internal parenthetical citations omitted).) As the findings emphasized above make clear, the ALJ discussed (and then later cited to) medical evidence in the record inconsistent with the extreme limitations on the Whitson MSS, permitting the Court to meaningfully review the ALJ's decision-making. See McCartney, 28 F. App'x at 279 (holding that "the ALJ need only review medical evidence once in his decision").

3. PA Nwoko's Opinions

PA Nwoko also submitted opinions on the same preprinted form as Dr. Newman and LCSW Whitson on May 2, 2023 ("Nwoko MSS"), and provided diagnoses of PTSD, panic disorder with agoraphobia, insomnia, and bipolar disorder, depressed, with psychotic features. (Tr. 469.) PA Nwoko stated that Plaintiff's "stressors" included "loud noises, enclosed spaces, going outside of [her] home, [and her] ex-partner," and listed Plaintiff's symptoms as anhedonia,

26

decreased energy and fatigue, persistent anxiety, withdrawal, psychomotor agitation or retardation, difficulty concentrating, paranoia, hyperactivity/ distractibility, and disturbance of mood and sleep. (Id.) According to PA Nwoko, Plaintiff's mental impairments rendered her "[i]ncapable of even 'low stress' work" and would cause her to remain off-task "25 [percent] or more" of a typical workday and miss work "[m]ore than four days per month." (Id.)[13] PA Nwoko further opined that Plaintiff had "none-[to-]mild" limitation in her ability to understand, remember, or apply information, "moderate" limitations in her abilities to interact with others and concentrate, persist, or maintain pace, and "marked" limitation in her ability to adapt and self-manage. (Id.)

The ALJ evaluated the persuasive value of the Nwoko MSS as follows:

> The [ALJ] finds th[e Nwoko MSS ] is not persuasive. Although the opinions as to the first three [paragraph] B criteria are consistent with [Plaintiff]'s treatment records, the [Nwoko MSS] as a whole is not well supported, as [PA Nwoko] provided next to no narrative support for the ratings of functional limitations. The opinion as to the fourth criterion is not well supported and is also inconsistent with the [Newman MSS] and [Whitson MSS} and with the overall treatment record. Similarly, the opinions as to expected unscheduled breaks, time off task, capacity to perform low stress work, and absenteeism are unsupported and are inconsistent with the overall treatment record. Notably, [PA Nwoko] completed th[e Nwoko MSS] after the very first visit with [Plaintiff], and while there were some abnormal findings on the mental status examination on

---

[13] PA Nwoko described the number of unscheduled breaks Plaintiff would need during a workday as "indeterminate" due to her status as "currently not working." (Tr. 469.)

> that visit, the [Nwoko MSS] appears to have been
> completed largely based on [Plaintiff]'s subjective
> reports. The degree of limitation expressed is also
> inconsistent with [Plaintiff]'s election not to make any
> adjustments in her medication regime, which suggests an
> adequate level of control of symptoms at that time. At
> the next appointment six weeks later, findings on mental
> status examination were somewhat improved, despite some
> recent situational stressors, and medications were again
> continued without change.

(Tr. 36 (internal parenthetical citations omitted).) Plaintiff
challenges that analysis on multiple fronts (see Docket Entry 10 at
11-13), none of which, for the reasons that follow, have merit.

Plaintiff first repeats her objection to the ALJ's reliance on
the lack of narrative explanation supporting the Nwoko MSS (see id.
at 11 (citing Tr. 36)) but, as discussed above, the ALJ may
permissibly discount the persuasiveness of an opinion to the extent
the source fails to provide supporting explanations, see, e.g.,
Simone, 2020 WL 961431, at *5; Curtis W., 2019 WL 6872869, at *3;
Mullinax, 2019 WL 4565050, at *3; Shelton, 2015 WL 1276903, at *3;
Schaller, 2014 WL 4537184, at *16.

Plaintiff also faults the ALJ for "discount[ing] the [Nwoko
MSS] because it was [issued] 'after the very first visit with'
Plaintiff" (Docket Entry 10 at 11 (quoting Tr. 36)), and contends
that such a "rationale makes no logical sense given the RFC is
based completely on the non-examining . . . review completed by
[the reconsideration-level state agency psychological consultant]"
(id. (citing Tr. 35)). To begin, the regulations require the ALJ
to consider the "[l]ength," "[f]requency," and "[e]xtent" of PA

28

Nwoko's treatment relationship with Plaintiff, 20 C.F.R. §§ 404.1520c(c)(3), 416.920c(c)(3). Thus, the fact that PA Nwoko had treated Plaintiff on only <u>one</u> occasion before completing the Nwoko MSS held relevance to "whether [PA Nwoko] ha[d] a longitudinal understanding of [Plaintiff's] impairments," 20 C.F.R. §§ 404.1520c(c)(3)(i), (ii), 416.920c(c)(3)(i), (ii).

Furthermore, Plaintiff's argument that the ALJ relied "<u>completely</u>" on the reconsideration-level consultant's opinion to formulate the RFC (Docket Entry 10 at 11 (emphasis added)) glosses over the fact that the ALJ found that consultant's opinion "<u>mostly</u> persuasive" (Tr. 35 (emphasis added)), finding the consultant's paragraph "B criteria [ratings] more consistent with the evidence and supported by objective medical findings," but deeming the consultant's "functional limitations [] vaguely expressed" (<u>id.</u>; <u>see also</u> Tr. 100-01, 109-10 (reconsideration-level consultant's opinions limiting Plaintiff to "simple tasks," "minim[al] social demands," and "simple changes in routine" and, "[o]verall," to "[simple, routine, repetitive tasks ('SRRTs')]").) Consistent with that analysis, the ALJ included in the RFC non-exertional limitations to "simple instructions," "simple work-related decisions," "occasional contact with co-workers and supervisors and no contact with the general public as an essential function of the job," and "a low stress setting . . . involving[] no paced production requirements, . . . occasional changes in the work

29

setting or routine, and no dealing with crisis situations as an essential function of the job." (Tr. 29.) In fashioning the RFC, the ALJ also considered the objective medical evidence (see Tr. 30-34) and Plaintiff's subjective symptom reports, which the ALJ found "not entirely consistent" with the evidence, but did not wholly dismiss (Tr. 30 (emphasis added)). Accordingly, the ALJ did not base the RFC "completely" (Docket Entry 10 at 11) on the reconsideration-level consultant's opinion.

Next, Plaintiff characterizes the ALJ's observation that PA Nwoko completed his MSS "'based on [Plaintiff]'s subjective reports'" as "untrue" (id. (quoting Tr. 36)), and argues that "[t]he pages [of PA Nwoko's treatment records] cited by the ALJ note [multiple mental] symptoms" (id. (citing Tr. 556-57)). Additionally, Plaintiff asserts that "[i]t was not inappropriate for [PA Nwoko] to rely on Plaintiff's subjective reports to establish [PA Nwoko's] findings" (id. at 12), because "'a psychiatrist [or psychologist] must base his or her findings on the subjective reports of a patient[, as [p]sychology and psychiatry necessarily rely on such subjective reports because the types of disorders they deal with are not usually susceptible to direct physical observation as in other medical areas'" (id. at 11 (quoting Thompson v. Berryhill, No. 4:18CV133, 2019 WL 2980030, at *12 (E.D.N.C. Apr. 22, 2019) (unpublished), recommendation adopted

30

sub nom <u>Thompson v. Saul</u>, 2019 WL 2932736 (E.D.N.C. July 8, 2019) (unpublished))).

At the outset, the fact that the diagnosis of certain mental impairments may depend to a larger degree than physical impairments on an individual's subjective symptom reports neither renders objective medical findings irrelevant nor precludes an ALJ from discounting a provider's opinions because the provider over-relied on those subjective reports. <u>See</u> <u>Vaughn v. Kijakazi</u>, No. 1:21CV1, 2022 WL 604257, at *11 (M.D.N.C. Mar. 1, 2022) (unpublished) (rejecting the plaintiff's argument that her mental impairments "result[ed] in entirely subjective symptoms," where "[t]he record contain[ed] numerous mental status examinations by [the p]laintiff's treating mental health providers . . . [reflecting] the <u>objective</u> observations . . . of [those] mental health professionals," who "<u>objectively</u> verified through [those ] examinations whether [the p]laintiff's [mental impairments] impacted her orientation, appearance, behavior, speech, thoughts, affect, concentration, attention, memory, judgment, and insight"), <u>recommendation adopted</u>, 2022 WL 981181 (M.D.N.C. Mar. 31, 2022) (Schroeder, C.J.); <u>Fedornak v. Commissioner of Soc. Sec.</u>, No. 8:20CV416, 2021 WL 397353, at *5 (M.D. Fla. Jan. 19, 2021) (unpublished) (classifying "mental status examinations" as "form of objective evidence" and holding that, "[w]hile psychological diagnoses will depend <u>in part</u> on the subjective allegations by the

31

patient, there is no precedent for relying solely on a patient's self-reporting of psychological limitations" (emphasis added)), recommendation adopted, 2021 WL 391268 (M.D. Fla. Feb. 4, 2021) (unpublished); Blessing v. Astrue, No. 12CV5275, 2013 WL 316153, *7 (W.D. Wash. 2013) (unpublished) ("Like the physical examination, the Mental Status Examination is termed the objective portion of the patient evaluation." (emphasis added) (quoting Paula T. Trzepacz and Robert W. Baker, The Psychiatric Mental Status Examination, 3-4 (Oxford Univ. Press 1993))).

Moreover, pages 556 and 557 of the administrative record indeed contain a list of mental symptoms (see Tr. 556-57), but those symptoms do not appear as findings in PA Nwoko's mental status examination but rather in the subjective portion of the treatment record entitled "History of Present Illness" (Tr. 555). Indeed, on mental status examination, although PA Nwoko recorded an "[a]nxious, [d]epressed, and [d]ysphoric" mood with a "[c]ongruent and [d]epressed" affect, PA Nwoko also found Plaintiff "not hyperactive" and "[w]ell [g]roomed," with "[g]ood eye contact, "[c]lear and [c]oherent" speech, "[c]oherent" and "[g]oal [d]irected" thought process, "[f]ull" orientation, "[f]air" insight, and "[g]ood" memory and recall, judgment, concentration, attention span, and fund of knowledge. (Tr. 560.) PA Nwoko further described Plaintiff's cognition as within normal limits

(see id.) and her activities of daily living ("ADLs") as "[i]ntact" (id.).

In light of those mostly normal mental status findings, the ALJ did not err by discounting the Nwoko MSS, in part, because PA Nwoko over-relied on Plaintiff's subjective symptom reports. See Julin v. Colvin, 826 F.3d 1082, 1088-89 (8th Cir. 2016) (holding that "the ALJ was entitled to discount [the physician]'s opinions insofar as they relied on [the plaintiff]'s subjective complaints", where physician's opinions that the plaintiff "struggles to interact with people" and "would have difficulty with pace, concentration, and completing tasks" relied on materials "that [the plaintiff] completed[, m]uch of [which wa]s derived from [her] recitation of her symptoms"); Scottie J. D. v. O'Malley, No. 1:23CV695, 2024 WL 2746799, at *10 (M.D.N.C. May 29, 2024) (unpublished) ("Consistent with the lack of objective findings supporting [the consultative psychological examiner]'s opinions, [the examiner]'s report makes clear he relied heavily on [the p]laintiff's subjective statements. . . . Under such circumstances, the ALJ did not err by discounting [the examiner]'s opinions, in part, because they over-relied on [the p]laintiff's subjective reports."), recommendation adopted, 2024 WL 3498405 (M.D.N.C. July 22, 2024) (unpublished) (Schroeder, J.); Miller v. Kijakazi, No. 1:21CV97, 2022 WL 1004582, at *10 (M.D.N.C. Apr. 4, 2022) (unpublished) ("[The consultative psychological examiner]

33

found [the p]laintiff pleasant, friendly and open, with rapport easily established, and eye contact established and maintained and thus [the examiner] based his statement that [the p]laintiff had a history of not getting along with his fellow workers and supervisors and reported he was easily angered and tended to argue on [the p]laintiff's subjective statements rather than any objective findings. . . . [T]he ALJ did not err in discounting [the examiner]'s opinions based, in part, on his over-reliance on [the p]laintiff's subjective symptom reporting[.]" (internal quotation marks, parenthetical citations, some brackets, and ellipsis omitted)), <u>recommendation adopted</u>, slip op. (M.D.N.C. Apr. 20, 2022) (Schroeder, C.J.).

Additionally, Plaintiff objects to "the ALJ['s] reject[ion of the Nwoko MSS] based on Plaintiff's desire to maintain her current medication regimen." (Docket Entry 10 at 12 (citing Tr. 36).) In that regard, Plaintiff contends that, "given the side effects noted at the time of the [Nwoko MSS] (weight gain, dizziness, sedation[], diabetes risk, fatigue, depression, dizziness, [] forgetfulness, confusion, nausea, vomiting, edema, blurred vision, and hypotension), it appears reasonable that Plaintiff would not want to adjust or increase any medication." (<u>Id.</u> (citing Tr. 469).)

Plaintiff's argument falls short, because PA Nwoko clearly listed <u>potential</u> (as opposed to actual) side effects of Plaintiff's medications on the Nwoko MSS: including "weight gain, dizziness,

sedation, diabetes [and] dyslipidemia <u>risk</u>" as possible side effects of Seroquel, "sedation, fatigue, depression, dizziness, [] forgetfulness, [and] confusion" as potential side effects of alprazolam (Xanax), and "[n]ausea, vomiting, edema, blurred vision, dizziness, [and] hypotension" as possible side effects of Trazodone. (Tr. 469 (emphasis added).) Although at different places in the record, Plaintiff complained of weight gain, sedation, and blurred vision related to her Seroquel (<u>see</u> Tr. 54-55, 261, 281-82, 387, 404), PA Nwoko's records do not reflect that Plaintiff complained to PA Nwoko of <u>any</u> of the side effects listed on the Nwoko MSS (<u>see</u> Tr. 517-620), and instead "report[ed] that her medications continue[d] to be helpful and <u>denie[d] any issues or concerns</u> regarding her current regimen" (Tr. 585 (emphasis added)). Thus, the fact that Plaintiff opted not to change her medication regimen held relevance to the intensity, persistence, and limiting effects of her mental symptoms, and the ALJ did not err by relying on that fact (<u>see</u> Tr. 36). <u>See</u> Social Security Ruling 16-3p, <u>Titles II and XVI: Evaluation of Symptoms in Disability Claims</u>, 2017 WL 5180304, at *9 (Oct. 25, 2017) ("SSR 16-3p") ("Persistent attempts to obtain relief of symptoms, such as <u>increasing dosages and changing medications</u>, trying a variety of treatments, referrals to specialists, or changing treatment sources may be an indication that an individual's symptoms are a source of

35

distress and may show that they are intense and persistent." (emphasis added)).

Lastly, Plaintiff challenges the ALJ's "state[ment] that [the Nwoko MSS] is inconsistent with the [Newman MSS] and [the Whitson MSS]" (Docket Entry 10 at 12 (citing Tr. 36)), deeming it "unclear why this would matter given the ALJ rejected both of those opinions as well" (id. at 12-13). Plaintiff further points out that all three MSSs "opined Plaintiff would need unscheduled breaks during the workday, would be off-task more than 25 percent of the workday, would be absent more than four days per month, would be incapable of even 'low stress' work, and would have marked limitations in adapting and managing herself." (Id. at 13 (citing Tr. 361, 429, 469).)

Plaintiff misstates the record by asserting that all three MSSs "opined Plaintiff . . . would have marked limitations in adapting and managing herself." (Id. (emphasis added) (citing Tr. 361, 429, 469).) In fact, both the Newman MSS and Whitson MSS reflect only "moderate" limitations in that functional area (Tr. 361, 429 (emphasis added)), which harmonize with the ALJ's moderate finding in adaptation/self-management at step three of the SEP (see Tr. 28). Thus, in specifically finding the Nwoko MSS's "marked" limitation in adaptation/self-management (Tr. 469 (emphasis added)) not persuasive (see Tr. 36), the ALJ noted that the Newman MSS and Whitson MSS, which reflected greater limitations than the Nwoko MSS

36

in the other three paragraph B criteria (<u>compare</u> Tr. 361, 429, <u>with</u> Tr. 469), provided lesser, i.e., "inconsistent" (Tr. 36), limitations in adaptation/self-management.

In light of the foregoing analysis, Plaintiff has failed to demonstrate that the ALJ reversibly erred in evaluating the Newman MSS, the Whitson MSS, and the Nwoko MSS and thus Plaintiff's first and only assignment of error fails as a matter of law.

### III. CONCLUSION

Plaintiff has not established an error warranting relief.

**IT IS THEREFORE ORDERED** that the Commissioner's decision finding no disability is **AFFIRMED**, and that this action is **DISMISSED** with prejudice.


<u>            /s/ L. Patrick Auld            </u>
**L. Patrick Auld**
**United States Magistrate Judge**

September 19, 2025

37